UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| G.B., | : | Case No. 1:08-cv-437 |
| | : | |
| Plaintiff, | : | Magistrate Judge Timothy S. Black |
| | : | |
| vs. | : | **ORDER GRANTING IN PART** |
| | : | **AND DENYING IN PART** |
| NANCY H. ROGERS | : | **DEFENDANT'S MOTION TO** |
| Attorney General of Ohio, | : | **DISMISS** |
| | : | |
| Defendant. | : | |

This case is currently before the Court on Defendant's motion to dismiss for lack of jurisdiction or, in the alternative, for judgment on the pleadings (Docs. 11, 12), and the parties responsive memoranda (Docs. 15, 16). The parties have consented to final adjudication by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 9).

For the reasons that follow, the Court **DENIES** Defendant's motion to dismiss as to Counts I, II, and III, and **GRANTS** Defendant's motion to dismiss as to Count IV.

## I.   BACKGROUND FACTS

Plaintiff G.B.[1] brings this action to challenge the constitutionality of the new sex offender registration scheme under Ohio's Adam Walsh Act (Amended Substitute Senate Bill 10), both on its face and as applied to Plaintiff.

---

[1] The parties have agreed to protect Plaintiff's anonymity in these proceedings and refer to her only by her initials, G.B.

Ohio has had some form of sex offender registry since 1963.  Over time, the scope of the registry and associated duties have changed.  Most recently, the Ohio General Assembly enacted Amended Substitute Senate Bill 10 ("S.B. 10"), which was signed into law by the Governor on June 30, 2007.  S.B. 10 made sweeping changes to Ohio's sex offender registration scheme and enacted new provisions for sex offenders pursuant to the federal Adam Walsh Act.  Under S.B. 10, Ohio enacted new definitions and duties for sex offenders and created new duties for certain public officials.  S.B. 10 did away with the old Megan's Law scheme and enacted a three-tiered system for classifying offenders based solely on the offense for which they were convicted or pled guilty.  Plaintiff is not a registered sex offender and has not been charged with a sex offense.

This litigation concerns only a single aspect of S.B. 10:  the designation of pandering obscenity as an offense subject to sex offender registration.  Before the enactment of S.B. 10, a charge of pandering obscenity under Ohio Rev. Code § 2907.32 or an equivalent foreign statute was not a registration offense.  S.B. 10 amended Ohio Rev. Code § 2950.01 to define "Tier I sex offender" to include anyone convicted of a violation of Ohio Rev. Code § 2907.32 or the equivalent.  S.B. 10 did not enact any change to Ohio Rev. Code § 2907.32 itself, or to Ohio's statutory definition of obscenity, Ohio Rev. Code § 2907.01(F).  The Tier I sex offender designation for pandering obscenity depends entirely on a conviction under Ohio's existing criminal statute.

Plaintiff is a manager for Hustler-Cincinnati, Inc., a store that sells "a variety of materials of a sexual nature, including but not limited to video tapes, DVDs, magazines, lotions, massage oils, lingerie, novelties, and other general merchandise." (Doc. 2 at ¶ 20). Plaintiff alleges that "Hamilton County has a history of aggressively prosecuting sexually explicit materials." (*Id*. at ¶ 22). Various Hustler outlets have been targeted by such prosecutions. (*Id*. at ¶¶ 5, 22). Plaintiff fears facing obscenity charges because her work "may come under unpredictable criminal scrutiny at any moment." (*Id*.)

In addition to her fear of prosecution on charges of pandering obscenity, Plaintiff fears that a conviction would result in her being labeled as a Tier I sex offender and subject her to the corresponding registration duties and other restrictions. (Doc. 2 at ¶¶ 5, 18). She also fears that the label of sex offender would result in social consequences and harassment. (*Id*.) Plaintiff does not want to expand the store's product line due to her fear of prosecution and the possible resulting sex offender label. (*Id*. at ¶¶ 18, 21). At the heart of her claim is the allegation that "[t]he subjective and ever-evolving definition of obscenity, coupled with Hamilton County's history of censorship and aggressive enforcement of obscenity laws, threatens to limit both the availability of sexually oriented non-obscene materials and the willingness of adults to involve themselves in the sale, distribution, and transportation of sexually oriented non-obscene materials." (*Id*. at ¶ 18). Specifically, S.B. 10's changes to Ohio's sex offender registry scheme may subject Plaintiff to the possibility of being labeled a sex offender.

Defendant claims that the amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for failure to invoke the jurisdiction of this Court because Plaintiff does not have standing. In the alternative, Defendant claims that the amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(c) for failure to allege a claim for relief because the possibility of an obscenity charge is not affected by S.B. 10.

## II. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction. Under the Federal Rules, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion." *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l. Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). *See also Rapier v. Union City Non-Ferrous, Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. Gen. Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction").

Article III, Section 2 of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies" between parties. In each federal case, therefore, the plaintiff must establish that an actual case or controversy exists to support

jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In order to satisfy this Article III requirement, plaintiff must show that it suffered an "injury in fact," which it can demonstrate by presenting an "invasion of a legally protected interest" that is both "concrete and particularized" and "actual and imminent." *Id*. Plaintiff must also demonstrate a causal connection between the injury and the conduct complained of, and that a favorable decision would likely redress or remedy the injury. *Id*.

### B. Fed. R. Civ. P. 12(c)

In the alternative, Defendant moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais & Co., Inc*., 108 F.3d 86, 88 (6th Cir. 1997). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower v. Fed. Exp. Corp*., 96 F.3d 200, 203 (6th Cir. 1996).

The Supreme Court has explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To withstand the dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id*. at 554-555. The complaint "must contain either direct or inferential

allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 555-556. The Court does not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face." *Id*. at 570.

Thus, the test for dismissal under Rule 12(b)(6) is a stringent one, and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). *See also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1189 (6th Cir. 1996). For these reasons, "courts have notably hesitated to grant motions for judgment on the pleadings." *Haeberle v. Univ. of Louisville*, 90 Fed. Appx. 895, 903 (6th Cir. 2004).

## III.    ANALYSIS

### A.    Standing

In order to establish standing, Plaintiff must allege: (1) injury in fact (an invasion of a legally-protected interest that is concrete, particularized, and actual or imminent); (2) a causal relationship between the injury and the challenged legislation or regulation (the injury can fairly be traced to the challenged action and not to the conduct of a third party); and (3) a likelihood that the injury will be redressed by a favorable decision (the possibility of obtaining relief as a result of a favorable decision is not too speculative).

*DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 413-14 (6th Cir. 1997).

These requirements are relaxed in First Amendment cases where "an overbroad statute [acts] to 'chill' the exercise of rights guaranteed protection." *United States v. Blaszak*, 349 F.3d 881, 888 (6th Cir. 2003). *See also Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995) (the "overbreath doctrine provides an exception to the traditional rules of standing and allows parties not yet affected by a statute to bring actions under the First Amendment based on a belief that a certain statute is so broad as to 'chill' the exercise of free speech and expression.").

In the instant case, Plaintiff is challenging the constitutionality of S.B. 10 both on its face and as applied. "Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Sec'y of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947, 956-957 (1984) (*quoting Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

Numerous courts, including the United States Supreme Court, have determined that a self-imposed chilling effect on speech constitutes a sufficient injury in fact to confer standing.[2] For example, in *Virginia v. Am. Booksellers Assoc.*, 484 U.S. 383

---

[2] *See. e.g., Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) (standing exists if governmental action impairs sales of arguably protected materials); *Adult Video Ass'n v. Barr,* 960 F.2d 781 (9th Cir. 1992), *vacated on other grounds sub nom* (holding that the case fit squarly within the overbreath exception to traditional standing requirements because it involved a facial challenge to the RICO statute's obscenity provision).

(1988), the Supreme Court permitted plaintiffs, who were faced with the decision to self-censor or risk criminal prosecution, to bring a pre-enforcement challenge to the state's harmful to minors statute.  Noting that the choice between silencing speech or being criminally charged is itself offensive to the Constitution, the Supreme Court observed: "[t]he alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution."  *Id*. at 393.  The lower courts have agreed, conferring standing on a wide range of plaintiffs whose expression is chilled by government.  *See, e.g., St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481 (8th Cir. 2006) ("[w]hen a party brings a pre-enforcement challenge to a statute that provides for criminal penalties and claims that the statute chills the exercise of its rights to free expression, the chilling effect alone may constitute injury"); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (a plaintiff who is harmed by the infringement of another person's right to free speech has standing to challenge that infringement because the harm establishes standing); *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 101 (2d Cir. 2003) (plaintiffs met the threshold for establishing standing for a First Amendment claim by demonstrating an actual and well-founded fear that a law prohibiting speech will be enforced against them).

Defendant claims, however, that *Morrison v. Bd. of Ed. of Boyd Cty.*, 521 F.3d 602 (6th Cir. 2008), is controlling in this matter.  At issue in *Morrison* was whether a high school student's decision not to speak out about his views on homosexuality had standing to challenge the school board's policy against stigmatizing or insulting expression.  *Id*. at

604-05.  Ruling that he did not, the court emphasized that subjective chill alone is insufficient to confer standing.  *Id*. at 610.  Rather, there must be some indication – either through current circumstances or prior behavior – to indicate that a speaker's fear of retribution is concrete enough to create a case or controversy.  *Id.*

 *Morrison* is distinguishable from the instant case for several reasons.  First, the challenged regulation in *Morrison* was a school policy that carried no potential for criminal enforcement.  Here, on the other hand, S.B. 10 imposes a quasi-criminal punishment in the form of registration, and then punishes failure to comply with the registration requirement with separate criminal penalties.  *See* Ohio Rev. Code § 2950.04. Precisely because the statute contains a criminal enforcement mechanism, Plaintiff cannot simply wait to be charged and convicted of an obscenity offense to vindicate her First Amendment rights in federal court.  At that stage, and contrary to the procedural posture of *Morrison*, the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), would prevent Plaintiff from raising her constitutional claims in federal court.  In addition, unlike the case in *Morrison*, Plaintiff alleged in her complaint that Ohio's obscenity laws have been aggressively enforced in Hamilton County, a fact that must be accepted as true for the purposes of Defendant's motion.[3]  Thus, in contrast to *Morrison* who speculated that he would be disciplined if he chose to express his views on homosexuality, Plaintiff alleges a real, tangible, and reasonable fear that she could ultimately be forced to register

---

 [3]  *See also Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) ("A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him, the threat is latent in the existence of the statute.").

as a sex offender if she chose to expand the store's adult inventory. Additionally, it is

reasonable that Plaintiff's alleged injury would be redressed if this Court enjoined the

challenged portions of S.B. 10, because Plaintiff would no longer face the potential of

being forced to register as a sex offender. Under these principles, Plaintiff has standing to

challenge S.B. 10's inclusion of obscenity as an offense subject to sex offender

registration..

## B.    Judgment on the Pleadings

In the alternative, Defendant argues that it is entitled to judgment as a matter of

law pursuant to Fed. R. Civ. P. 12(c), because the case does not present any justiciable

issues. The Court will address each of Plaintiff's four claims in turn.

### 1.    First Amendment Free Speech

In her first claim Plaintiff alleges that S.B. 10 violates the First Amendment

because it chills more lawful, constitutionally protected speech than is the target of the

law. (Doc. 2 at ¶¶ 23-25). "A primary reason G.B. does not want to expand the product

line to include additional merchandise is her fear of being prosecuted for pandering

obscenity under Ohio Rev. Code § 2907.32 and thereafter labeled as a sex offender under

Senate Bill 10." (*Id*. at ¶ 21).

Defendant argues that Ohio's obscenity law incorporates constitutional protections

to ensure that protected speech is not subject to criminal punishment. *See State v.

Burgun*, 56 Ohio St. 2d 354 (1978); *Turoso v. Cleveland Mun. Court,* 674 F.2d 486 (6th

Cir. 1982). Accordingly, Defendant argues that the creation of a new collateral

consequence in the form of a civil sex offender registration requirement does not expand the reach of Ohio's obscenity law.

Obscene speech is not protected by the First Amendment. *Roth v. United States*, 354 U.S. 476, 485 (1957). Conversely, non-obscene speech is protected. *Miller v. California*, 413 U.S. 15 (1973). The Supreme Court has consistently held that, as to adults, "sexual expression which is indecent but not obscene is protected by the First Amendment." *Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989). The *Miller* protections for sexually explicit, non-obscene speech apply to charges of pandering obscenity under Ohio Rev. Code § 2907.32. *Sovereign News Co. v. Falke,* 674 F.2d 484 (6th Cir. 1982); *Burgun*, 56 Ohio St. 2d 354. The United States Supreme Court allowed state courts to incorporate the *Miller* standard into already-existing obscenity statutes by "authoritative construction" in lieu of forcing state legislatures to re-enact those statutes. *Miller*, 413 U.S. at 24-25. That is precisely what the Supreme Court of Ohio did in *Burgun*. Accordingly, sexually explicit, non-obscene speech cannot result in a conviction for pandering obscenity under Ohio Rev. Code § 2907.32.

Plaintiff acknowledges that the statute expressly states that only those who violate the state's obscenity laws are required to register. Ohio Rev. Code § 2907.32. The problem Plaintiff highlights is the fact that such a designation impacts and chills vastly more lawful, constitutionally protected speech than is the target of the law. (Doc. 2 at ¶¶ 24-25). Accordingly, in an effort to prevent criminal prosecution, Plaintiff and others will be required to err on the side of caution and suppress lawful, constitutionally protected material that is not the target of the law. (*Id.*)

The U.S. Supreme Court has consistently held that the imposition of a chilling effect on constitutionally protected speech violates the First Amendment. *See, e.g., Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002); *Reno v. ACLU*, 521 U.S. 844, 874 (1997) ("In evaluating the free speech rights of adults, we have made it perfectly clear that sexual expression which is indecent but not obscene is protected by the First Amendment").

In evaluating Plaintiff's claim, the undersigned must accept Plaintiff's allegations of self-censorship as true. Although Ohio Rev. Code § 2907.32 prohibits prosecution of non-obscene speech, Plaintiff alleges facts that on its face, the statute chills a substantial amount of protected, non-obscene speech. Accordingly, Plaintiff has alleged sufficient facts to state a cause of action that S.B. 10 violates the First Amendment.

### 2. Commerce Clause

In her second claim, Plaintiff alleges that S.B. 10 violates the dormant commerce clause by requiring out-of-state obscenity offenders to register in their home states even where those states do not impose a registration requirement or would not consider the materials to be obscene. (Doc. 2 at ¶¶ 26-30). Ohio Rev. Code § 2950.03(A) requires that an individual convicted of pandering obscenity in Ohio register in her county of residence, employment, and education, even if such residence, employment, or education is not in Ohio. Out-of-state registration is required regardless of whether the out-of-state jurisdiction requires registration for similar offenses, and regardless of whether the out-of-state's community standards would consider the material obscene. Therefore, Plaintiff

claims that the State unnecessarily burdens the ability of convicted individuals to find

meaningful residence, employment, or education outside the State, an excessive burden

on commerce and an individual's fundamental right to travel with little local benefit.  *See*,

*e.g., PSINet, Inc. v. Chapman*, 362 F.3d 227, 239-40 (4th Cir. 2004) (striking Virginia's

harmful to minors statute on dormant commerce clause grounds).

Defendant argues that despite the fact that governing standards of obscenity may

vary from jurisdiction to jurisdiction, S.B. 10 does not affect legitimate interstate

commerce because the registration requirements only apply to individuals who are

convicted of illegal activity which is constitutionally subject to punishment.

The negative implication of the commerce clause, U.S. Const. Art I., § 8, cl. 3,

includes a prohibition on state regulation that "discriminates against or unduly burdens

interstate commerce and thereby impedes free private trade in the national marketplace."

*Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997).  The dormant commerce clause

prohibits states from improperly burdening interstate commerce, and may presumably

protect the legitimate interstate trade in non-obscene adult material.

The Supreme Court set forth a balancing test applicable to indirect regulations of

interstate commerce in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).  The two-fold

inquiry first looks at the legitimacy of the state's interest and second weighs the burden

on interstate commerce in light of the local benefit derived from the statute.  *Id*. at 142.

There is no question that Ohio has a compelling interest in protecting the physical well-

being of its citizens.  However, the local benefits of such a statute, requiring individuals

who have pandered obscene materials to register as sex-offenders, have not been proven

or even evidenced by Defendant.  Moreover, Plaintiff has alleged facts that the

registration requirement would unduly burden an obscenity offender's fundamental right

to travel.

Accepting the alleged facts as true, Plaintiff's claims are sufficient to state a cause

of action for violation of the dormant commerce clause.

### 3.    Procedural Due Process

Plaintiff's third claim alleges that S.B. 10 is unconstitutional because there is no

valid, constitutionally significant governmental interest in making obscenity offenders

register when there is no objective evidence that obscenity defendants present a risk to the

public.  (Doc. 2 at ¶¶ 31-33).  Accordingly, Plaintiff claims that S.B. 10 violates the

Fourteenth Amendment's guarantee of due process.

Defendant argues that this claim fails because courts have already determined that

when a sex offender classification applies automatically as the result of a conviction, no

hearing is required to determine the simple fact that the offender has been convicted.

Specifically, Defendant cites *Doe v. Dann*, No. 1:08-cv-220, 2008 U.S. Dist. LEXIS

45228 (N.D. Ohio June 9, 2008), where plaintiffs requested an opportunity to challenge

their proposed new classification under S.B. 10, and the Court held that classification of

an offender as a sexually oriented offender without a hearing did not deprive the offender

of any protected liberty or property interest.  *Id*. at 10, 14, 31.

However, unlike the plaintiffs in *Dann*, Plaintiff here does not challenge the

constitutionality of S.B. 10 on the grounds that its categorical approach to sex offender registration based on offenses violates the right to due process. Instead, Plaintiff challenges the legislative assumption that a valid constitutionally significant government interest in making obscenity offenders register exists. This point is central to Plaintiff's constitutional challenge in each of its claims in this case.

The purpose of requiring sex offenders to register is ostensibly to warn the community that there is a sexual predator living, working, or going to school in the area. Requiring an individual convicted of "pandering obscenity" to register as a sex offender poses a slippery slope that could deprive the sex offender registry of its import. Continuing to expand the scope of sex offender registration to those convicted of lesser "sex related" crimes, without legitimate evidence that the individual presents a risk to the public, will, at some point, result in the registry ceasing to serve its purpose.

The procedural component of the due process clause protects rights created by state law and guarantees that no significant deprivation of life, liberty, or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The fundamental elements of procedural due process are notice and an opportunity to be heard. *See, e.g., Yellow Freight Systems, Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir. 1992). In this context, Ohio Rev. Code § 2950.01(E)(1)(a) requires that an individual convicted of pandering obscenity be automatically subjected to Tier I classification, and the registration requirements and residency restrictions that follow.

A plaintiff can make a procedural due process claim through one of two methods: "(1) [by] demonstrating that [she] is deprived of property as a result of [an] established state procedure that itself violates due process rights; or (2) by proving that [d]efendants deprived [her] of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss." *Mocene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).

Thus, the question presently before the Court is whether, under the motion to dismiss standard, Plaintiff has alleged facts sufficient to show that S.B. 10 constitutes an established state procedure that deprives Plaintiff of her liberty interests, and if so, whether that deprivation contravenes notions of due process.

In determining whether Plaintiff has sufficiently stated a claim that S.B. 10 violates procedural due process, the Court must determine if the statute is subject to strict scrutiny or rational basis review. In most instances, pursuant to the principle of separation of powers, statutory or regulatory classifications are presumptively constitutional and will not be disturbed unless they are without rational basis and rest on grounds wholly irrelevant to the achievement of some permissible governmental purpose. *Green. v. Waterford Bd. of Educ.*, 473 F.2d 629, 632 (2d Cir. 1973). Nonetheless, "the presumption of constitutionality is lessened when the Court reviews legislation endangering fundamental constitutional rights, such as freedom of speech." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 506 (1944). In such cases, strict judicial scrutiny is required and classification will not stand unless justified by some compelling governmental interest. *Green*, 473 F.2d at 632.

Here, in effect, the statute arguably establishes a criminal disincentive to distribute

publications with particular content. While this Court acknowledges that obscene speech

is not protected,[4] Plaintiff has alleged facts that the registration requirement will

purportedly act to chill protected speech of a sexual nature. *Hustler Magazine, Inc. v.

Falwell*, 485 U.S. 46, 55 (1988) ("The fact that society may find speech offensive is not a

sufficient reason for suppressing it").

Unreasonable restrictions may impinge on a person's right to freedom of speech.

*See, e.g., Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502

U.S. 105 (1991) (where a regulation impacting constitutional rights is not narrowly

tailored to the harm the government seeks to prevent, it is unconstitutional). When the

challenged restriction subjects speech to severe restrictions, the regulation must be

narrowly drawn to advance a government interest of "compelling importance." *Burdick

v. Takushi*, 504 U.S. 428, 434 (1992). In contrast, where the regulation imposes only

reasonable administrative restrictions, the government's "important regulatory interests

are generally sufficient to justify the restrictions." *Id*.

At this early stage in the litigation, Plaintiff has set forth sufficient facts alleging

that S.B. 10 chills fundamental First Amendment speech. *See, e.g., Wisconsin v. Yoder*,

406 U.S. 205 (1972) (where a Fourteenth Amendment liberty interest is combined with

First Amendment free exercise concerns, the rights are fundamental and merit strict

scrutiny, while infringements on the Fourteenth Amendment interest alone are subject

---

[4] *Roth v. United States*, 354 U.S. 476, 481 (1957) (a government restriction on the
distribution of obscene materials receives no First Amendment scrutiny).

only to rational basis scrutiny). Here, for purposes of deciding whether Defendant is entitled to judgment on the pleadings, the Court invokes a strict scrutiny review. Moreover, even if the Court were to invoke a rational basis review, Defendant has not presented any evidence that obscenity offenders present a danger to the public sufficient to warrant an automatic sex-offender classification.

Therefore, Plaintiff has alleged sufficient facts to survive a motion to dismiss on her procedural due process claim.

### 4. Privacy

Finally, Plaintiff claims that S.B. 10 violates her right to privacy. (Doc. 2 at ¶¶ 34-36). Specifically, Plaintiff argues that the release of information to the general public about individuals classified as "sex offenders" for violation of local obscenity standards does not serve the governmental interests of public safety as offered in Ohio Rev. Code § 2950.02(6). (*Id*. at ¶ 34). Additionally, Plaintiff asserts that the individual right to possess obscenity extends to the right to sell and distribute obscenity. *See Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008); *Stanley v. Georgia*, 394 U.S. 557, 568 (1969) (individuals have the right to *possess* obscene materials in their homes). Accordingly, Plaintiff alleges that the inclusion of obscenity offenders in sex offender registries doubly violates the right of privacy in the material itself and violates Fourteenth Amendment substantive due process. (Doc. 11 at 8).

The Sixth Circuit requires the following two-step process for analyzing right-to-privacy claims: (1) the interest at stake must implicate either a fundamental right or one

implicit in the concept of ordered liberty; and (2) the government's interest in disseminating the information must be balanced against the individual's interest in keeping the information private. *Block v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998).

Substantive due process protects two types of privacy rights: (1) an individual's right to make "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education" *Lawrence v. Texas*, 539 U.S. 558, 574 (2003) and (2) an individual's "interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). Plaintiff predicates her action on the second line of privacy rights.

The Fourteenth Amendment guarantees "due process of law" for any deprivation of "life, liberty, or property." U.S. Const. Amend. XIV. The Fourteenth Amendment contains within it "a substantive component," *Planned Parenthood v. Casey*, 505 U.S. 833, 846 (1992), which protects other "fundamental rights and liberties" that are not expressly mentioned in the Bill of Rights but that are objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).

However, "[t]he Constitution does not encompass a general right to nondisclosure of private information." *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981). *See also Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) ("This circuit . . . will only balance an individual's interest in nondisclosure of informational privacy

against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension.").

The Supreme Court has held that the right recognized in *Stanley* to possess obscene material within the home "does not mean" that there is a correlative right to distribute the material, *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 376 (1971), and that it "does not require" the Court to fashion a right to distribute. *United States v. Reidel*, 402 U.S. 351, 356 (1971). *See also, Paris Adult Theatre v. Slaton*, 413 U.S. 49, 69 (1972) ("commerce in obscene material is unprotected by any constitutional doctrine of privacy"). Additionally, *Reliable Consultants* is distinguishable from the instant case because *Reliable* involved protected conduct, and not pandering obscenity subject to constitutionally permissible punishment.

In *Reliable*, the Court assesses the constitutionality of a Texas statute making it a crime to promote or sell sexual devices. The Texas obscenity statute defined "obscene material" so that it would track the Supreme Court's definition of obscenity detailed in *Miller v. California*, 413 U.S. 15, 23-25 (1973). The legislature also expanded the scope of the statute so that it would prohibit the "promotion" of "obscene devices." The legislature chose to broadly define "obscene device," not using the *Miller* test, but as "any device." *Reliable*, 517 F.3d at 740-741. The Fifth Circuit held that the statute violated the Fourteenth Amendment because the Texas statute could not define sexual devices as obscene and prohibit their sale because interference with their personal and private use violated the Constitution. *Id*. at 747. Conversely, in the instant case, the State did not

alter the statutory definition of obscene in S.B. 10.

Plaintiff's privacy claim is misplaced. Plaintiff's allegations should be aimed at the statute criminalizing "pandering obscenity" (Ohio Rev. Code § 2907.32), not S.B. 10. Criminal offenders do not have a privacy right in the release of personally identifying information, and that fact does not change for the release of personally identifying information in the sex offender context. There is no privacy right in public records, including court records and the fact of an individual's conviction. *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) (stating that "interests in privacy fade when the information involved already appears on the public record"); *Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008). Despite the fact that Plaintiff adequately alleged that releasing the names of obscenity offenders as sex offenders does not serve public safety interests, Plaintiff has failed to allege a fundamental right to privacy sufficient to satisfy the first step in analyzing a right-to-privacy claim.

Therefore, this Court finds that Plaintiff has not alleged sufficient facts to state a substantive due process claim.

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss (Doc. 11) is **DENIED** as to Counts I, II, and III, and **GRANTED** as to Count IV.

**IT IS SO ORDERED**.


Date: May 11, 2009                    s/ Timothy S. Black
                                      Timothy S. Black
                                      United States Magistrate Judge