UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| G.B., | : | Case No. 1:08-cv-437 |
| Plaintiff, | : | Magistrate Judge Timothy S. Black |
| vs. | : | **MEMORANDUM OF OPINION AND ORDER** |
| NANCY H. ROGERS Attorney General of Ohio, | : | |
| Defendant. | : | |

This civil action is currently before the Court on Defendant's motion for summary judgment (Doc. 19), Plaintiff's response in opposition and cross motion for summary judgment (Doc. 21) and Defendant's reply (Doc. 22). The parties have consented to final adjudication by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 9).

## I. BACKGROUND FACTS

Plaintiff G.B.[1] brings this action to challenge the constitutionality of the new sex offender registration scheme under Ohio's Adam Walsh Act (Amended Substitute Senate Bill 10), both on its face and as applied to Plaintiff.

Ohio has had some form of sex offender registry since 1963. Over time, the scope of the registry and associated duties have changed. Most recently, the Ohio General

---

[1] The parties have agreed to protect Plaintiff's anonymity in these proceedings and refer to her only by her initials, G.B.

Assembly enacted Amended Substitute Senate Bill 10 ("S.B. 10"), which was signed into law by the Governor on June 30, 2007. S.B. 10 made sweeping changes to Ohio's sex offender registration scheme and enacted new provisions for sex offenders pursuant to the federal Adam Walsh Act. Under S.B. 10, Ohio enacted new definitions and duties for sex offenders and created new duties for certain public officials. S.B. 10 did away with the old Megan's Law scheme and enacted a three-tiered system for classifying offenders based solely on the offense for which they were convicted or pled guilty.

This litigation concerns only a single aspect of S.B. 10: the designation of pandering obscenity as an offense subject to sex offender registration. Before the enactment of S.B. 10, a charge of pandering obscenity under Ohio Rev. Code § 2907.32[2]

---

[2] Ohio Rev. Code § 2907.32 states that:

(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

(1) Create, reproduce, or publish any obscene material, when the offender knows that the material is to be used for commercial exploitation or will be publicly disseminated or displayed, or when the offender is reckless in that regard;

(2) Promote or advertise for sale, delivery, or dissemination; sell, deliver, publicly disseminate, publicly display, exhibit, present, rent, or provide; or offer or agree to sell, deliver, publicly disseminate, publicly display, exhibit, present, rent, or provide, any obscene material;

(3) Create, direct, or produce an obscene performance, when the offender knows that it is to be used for commercial exploitation or will be publicly presented, or when the offender is reckless in that regard;

(4) Advertise or promote an obscene performance for presentation, or present or participate in presenting an obscene performance, when the performance is presented publicly, or when admission is charged;

(5) Buy, procure, possess, or control any obscene material with purpose to violate division (A)(2) or (4) of this section.

or an equivalent foreign statute was not a registration offense. S.B. 10 amended Ohio Rev. Code § 2950.01 to define "Tier I sex offender" to include anyone convicted of a violation of Ohio Rev. Code § 2907.32 or the equivalent. S.B. 10 did not enact any change to Ohio Rev. Code § 2907.32 itself, or to Ohio's statutory definition of obscenity, Ohio Rev. Code § 2907.01(F). The Tier I sex offender designation for pandering obscenity depends entirely on a conviction under Ohio's existing criminal statute.

Plaintiff is not a registered sex offender and has not been charged with a sex offense. Plaintiff is a manager for Hustler-Cincinnati, Inc., a store that sells "a variety of materials of a sexual nature, including but not limited to video tapes, DVDs, magazines, lotions, massage oils, lingerie, novelties, and other general merchandise." (Doc. 2 at ¶ 20). Plaintiff alleges that "Hamilton County has a history of aggressively prosecuting sexually explicit materials" (*Id*. at ¶ 22), and further alleges that various Hustler outlets have been targeted by such prosecutions. (*Id*. at ¶¶ 5, 22). Plaintiff further alleges that she fears facing obscenity charges because her work "may come under unpredictable criminal scrutiny at any moment." (*Id*.)

In addition to her fear of prosecution on charges of pandering obscenity, Plaintiff fears that a conviction would result in her being labeled as a Tier I sex offender and subject her to the corresponding registration duties and other restrictions. (Doc. 2 at ¶¶ 5, 18). She also fears that the label of sex offender would result in social consequences and

harassment. (*Id*.) Plaintiff does not want to expand the store's product line due to her fear of prosecution and the possible resulting sex offender label. (*Id.* at ¶¶ 18, 21). At the heart of her claim is the allegation that "[t]he subjective and ever-evolving definition of obscenity, coupled with Hamilton County's history of censorship and aggressive enforcement of obscenity laws, threatens to limit both the availability of sexually oriented non-obscene materials and the willingness of adults to involve themselves in the sale, distribution, and transportation of sexually oriented non-obscene materials." (*Id*. at ¶ 18). Specifically, S.B. 10's changes to Ohio's sex offender registry scheme may subject Plaintiff to the possibility of being labeled a sex offender.

This Court previously dismissed Plaintiff's privacy claim, finding that there was no privacy interest in public records of convictions for pandering obscenity. Now both Plaintiff and Defendant seek summary judgment on the remaining three claims.

## II.  STANDARD OF REVIEW

### A.  Summary Judgment

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the

outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### B. As Applied/Facial Challenge

Although Plaintiff asserts that she is challenging S.B. 10 "as applied" to her, she in fact presents only a facial challenge to the legislation because she is not a registered sex offender and has not been charged with any registration offense. Although she asserts that she fears potential prosecution, there is no actual prosecution at issue. Based on the position of this case and Plaintiff's assertion that she is not engaged in and does not seek to engage in prohibited conduct subject to sex offender registration, there is no "application" of S.B. 10 to challenge.

The Sixth Circuit has explained the difference between facial and as-applied challenges as follows:

> A court may hold a statute unconstitutional either because it is invalid "on its face" or because it is unconstitutional "as applied" to a particular set of circumstances. Each holding carries an important difference in terms of outcome: If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any

> circumstances. Traditionally, a plaintiff's burden in an as
> applied challenge is different from that in a facial challenge.
> In an as-applied challenge, "the plaintiff contends that
> application of the statute in the particular context in which he
> has acted, or in which he proposes to act, would be
> unconstitutional." *Ada v. Guam Soc'y of Obstetricians &
> Gynecologists*, 506 U.S. 1011 (1992) (Scalia, J., dissenting),
> *denying cert*. to 962 F.2d 1366 (9th Cir. 1992). Therefore, the
> constitutional inquiry in an as-applied challenge is limited to
> the plaintiff's particular situation.

*Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997). There is no actual application of S.B. 10 in Plaintiff's "particular situation." An as-applied challenge only arises where there is an alleged application of the statute "in the particular context in which [the plaintiff] has acted, or in which [s]he proposes to act." Because Plaintiff does not allege that her store sells obscene materials, there is no application of S.B. 10. It would only apply if Plaintiff were convicted of a registration-qualified offense. Plaintiff does not allege that S.B. 10 applies to her, but that S.B. 10's application to prohibited obscenity has a chilling effect on her conduct. As a result, Plaintiff's challenge to S.B. 10 on overbreadth grounds is only a facial challenge, and it must be addressed under the standard applied to facial challenges.

Recently, the Sixth Circuit expounded on the standard to be used in addressing a facial challenge to the constitutionality of a statute under the First Amendment. *Connection Distrib. Co. v. Holder*, 557 F.3d 321 (6th Cir. 2009). The court emphasized that the burden is on the plaintiff in such a case not only to establish some hypothetical chilling effect, but rather to show that there is "substantial overbreadth." *Id*. at 340. The question in the context of a facial challenge is not whether a court can conceive of one or

more unconstitutional applications of a statute; it is whether the alleged unconstitutional sweep of the statute is "*substantial* . . . relative to the statute's plainly legitimate sweep." *Id.* at 339-340. "Invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" *United States v. Williams*, 128 S. Ct. 1830, 1838 (2008). "In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* The standard to be applied is not whether there is "some" overbreadth, but whether the overbreadth is "substantial." *Connection Distrib. Co.*, 557 F.3d at 337. It is Plaintiff's burden to show substantial overbreadth.

### III. ANALYSIS

#### A. First Amendment Free Speech Rights

In her first claim Plaintiff alleges that S.B. 10 violates the First Amendment because it chills more lawful, constitutionally protected speech than is the target of the law. (Doc. 2 at ¶¶ 23-25). Specifically, Plaintiff alleges that she "does not want to expand the product line to include additional merchandise [because of] her fear of being prosecuted for pandering obscenity under Ohio Rev. Code § 2907.32 and thereafter labeled as a sex offender under Senate Bill 10." (*Id*. at ¶ 21).

S.B. 10 amended Ohio Rev. Code § 2950.01 to define "Tier 1 sex offender" to include anyone convicted of a violation of pandering obscenity under Ohio Rev. Code

§ 2907.32[3] or its equivalent under another state's laws. Accordingly, the law simply added a new collateral consequence in the form of a civil sex offender registration requirement; it did not expand the reach of Ohio's obscenity law.

Obscene speech is not protected by the First Amendment. *Roth v. United States*, 354 U.S. 476, 485 (1957). Conversely, non-obscene speech is protected. *Miller v. California*, 413 U.S. 15 (1973). The Supreme Court has consistently held that, as to adults, "sexual expression which is indecent but not obscene is protected by the First Amendment." *Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989). The *Miller* protections for sexually explicit, non-obscene speech apply to charges of pandering obscenity under Ohio Rev. Code § 2907.32. *Sovereign News Co. v. Falke,* 674 F.2d 484 (6th Cir. 1982); *State v. Burgun*, 56 Ohio St. 2d 354 (1978). The United States Supreme Court allowed state courts to incorporate the *Miller* standard into already-existing obscenity statutes by "authoritative construction" in lieu of forcing state legislatures to re-enact those statutes. *Miller*, 413 U.S. at 24-25. That is precisely what the Supreme Court of Ohio did in *State v. Burgun*, 56 Ohio St. 2d 354 (1978). Accordingly, sexually explicit, non-obscene speech cannot result in a conviction for pandering obscenity under Ohio Rev. Code § 2907.32.

Plaintiff acknowledges that the statute expressly states that only those who violate the state's obscenity laws are required to register. Ohio Rev. Code § 2907.32. However, Plaintiff claims that such a designation impacts and chills vastly more lawful,

---

[3] An individual who violates the state obscenity law may be convicted of a felony of the fifth degree.

constitutionally protected speech than is the target of the law.[4] (Doc. 2 at ¶¶ 24-25). Accordingly, in an effort to prevent criminal prosecution, Plaintiff alleges that she and others will be required to err on the side of caution and suppress lawful, constitutionally protected material that is not the target of the law.[5] (*Id.*)

Plaintiff essentially argues that the line between obscenity and protected speech is inherently unclear. This, however, is not a novel argument. Even Justice Brennan lamented that every obscenity case posed a "constitutional question of exceptional difficulty" to the judicial system because the extremely fact-intensive nature of each issue combined with the volume of cases undercut the predictability, consistency, and logic of obscenity decisions. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 91-93 (1973). "[T]he line between obscenity and free speech is unclear." *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J.) (commenting that obscenity is difficult to define "but I know it when I see it").

Although the Supreme Court in *Miller v. California*, 413 U.S. 15, devised a set of three criteria to be met in order for a work to be legitimately subject to state regulation, the Miller test is subjective in nature, allowing the fact finder to essentially decide what speech is offensive and what speech has merit. In fact, after its establishment, Justice

---

[4] Since the reach of Ohio's obscenity statute remains the same, Plaintiff is, in effect, arguing that a felony conviction for pandering obscenity would not chill lawful speech, but that the registration requirement does. Although numerous courts have held that a registration requirement is not punitive in nature, the fact that Plaintiff is only now challenging the statute's constitutionality highlights the gravity of a sex offender label.

[5] Again, regardless of the recent statutory changes as a result of S.B. 10, individuals who "pander obscenity" have always been subject to criminal prosecution. *See* Ohio Rev. Code § 2907.32.

Brennan began to regret that he ever supported excluding obscenity from the First Amendment and concluded that *Miller* is "incomparable with a coherent theory of free expression." *State v. Henry*, 732 P.2d 9, 17 (1987) (discussing J. Brennan's dissent in *Paris Adult Theatre I*, 413 U.S. 49). Although Plaintiff does not expressly attack the constitutionality of the underlying obscenity statute, its subjective nature must be taken into consideration when analyzing each of Plaintiff's claims.

While Plaintiff claims that she will have to self-censor for fear of being labeled a sex offender, the Supreme Court in *Ft. Wayne Books v. Indiana*, 489 U.S. 46, 60 (1989), held that "[t]he mere assertion of some possible self-censorship resulting from a statute is not enough to render an antiobscenity law unconstitutional under our precedents." The Court rejected the assertion that a racketeering charge could not be predicated on otherwise constitutionally sound obscenity charges due to a potential chilling effect. *Id.* The Court observed that "[t]he constitutionality of criminal sanctions against those who distribute obscene materials is well established" and held that the additional penalties resulting from racketeering charges predicated on those offenses were permissible. *Id.* at 54.

"[D]eterrence of the sale of obscene materials is a legitimate end of state antiobscenity laws, and our cases have long recognized the practical reality that any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene." *Smith v. California*, 361 U.S. 147, 154-155 (1959).

The Supreme Court revisited the argument in *Alexander v. United States*, 509 U.S. 544 (1993), which addressed a claim that forfeiture under racketeering laws likewise imposed a chilling effect when the racketeering charges were premised on obscenity offenses. The bookseller in that case was ordered to forfeit almost $9,000,000 in assets, including obscene materials, non-obscene expressive materials, and non-expressive property such as money and commercial real estate. *Id.* at 548. The Court held that *Ft. Wayne Books* was completely dispositive of the argument that this forfeiture would have a chilling effect on the exercise of First Amendment rights:

> "Each racketeering charge exposes a defendant to a maximum penalty of 20 years' imprisonment and a fine of up to $ 250,000. 18 U.S.C. § 1963(a) (1988 ed. and Supp. III). . . Needless to say, the prospect of such a lengthy prison sentence would have a far more powerful deterrent effect on protected speech than the prospect of any sort of forfeiture. Cf. *Blanton v. North Las Vegas*, 489 U.S. 538, 542 (1989) (loss of liberty is a more severe form of punishment than any monetary sanction). Similarly, a fine of several hundred thousand dollars would certainly be just as fatal to most businesses -- and, as such, would result in the same degree of self censorship -- as a forfeiture of assets. Yet these penalties are clearly constitutional under *Fort Wayne Books*."

*Alexander*, 509 U.S. at 556. "If the U.S. Supreme Court has found that imprisonment for up to 20 years for obscenity and the loss of $9,000,000 does not have an impermissibly chilling effect on protected speech, then it would be inapposite to find that a non-punitive, remedial civil registration scheme can have such an effect. *Fort Wayne Books* is dispositive of any chilling argument here[.]" *Alexander* 509 U.S. at 556.

Plaintiff attempts to bolster her argument about the chilling effect by citing cases that address laws struck down on other standards such as *Reno v. ACLU*, 521 U.S. 844 (1997) and *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002). In *Reno*, the Court found that the Communications Decency Act of 1996 was vague precisely because it failed to abide by the limitations in *Miller*. *Reno*, 521 U.S. at 874. It therefore threatened to sweep in protected speech. *Id.* Likewise in *Ashcroft*, the Court held a criminal law unconstitutional because it directly subjected protected speech to potential criminal prosecution. *Id.* 535 U.S. at 256 (stating, "§ 2256(8)(B) covers materials beyond the categories recognized in *Ferber* and *Miller*"). Both of these cases addressed laws that criminalized protected speech. Neither case applies here, because, in this case, the underlying criminal conduct is not protected under the First Amendment; that is, a charge for pandering obscenity under R.C. 2907.32 incorporates constitutional protections to ensure that protected speech is not subject to criminal punishment. *Sovereign News Co.*, 674 F.2d 484; *Burgun*, 56 Ohio St. 2d 354. Accordingly, the creation of a new collateral consequence in the form of a civil sex offender registration requirement does not expand the reach of Ohio's obscenity law.

Moreover, even if the registration and notification requirements constitute punishment, S.B. 10 is not overbroad because it does not apply to protected speech. Further, S.B. 10's registration and notification requirements as applied to obscenity charges do not have a *substantial* chilling effect so as to render them unconstitutional.

Therefore, Defendant is entitled to summary judgment on Plaintiff's first claim for violation of First Amendment speech rights.

### B. Burden on Right to Travel/Dormant Commerce Clause

#### 1. Right to Travel

In her second claim, Plaintiff alleges that S.B. 10 violates the right to travel by requiring out-of-state obscenity offenders to register in their home states even where those states do not impose a registration requirement or would not consider the materials to be obscene. (Doc. 2 at ¶¶ 26-30). Ohio Rev. Code § 2950.03(A) requires that an individual convicted of pandering obscenity in Ohio register in her county of residence, employment, and education, even if such residence, employment, or education is not in Ohio. Out-of-state registration is required regardless of whether the out-of-state jurisdiction requires registration for similar offenses, and regardless of whether the out-of-state's community standards would consider the material obscene. Therefore, Plaintiff claims that the State unnecessarily burdens the ability of convicted individuals to find meaningful residence, employment, or education outside the State, an excessive burden on commerce and an individual's fundamental right to travel with little local benefit. *See, e.g., PSINet, Inc. v. Chapman*, 362 F.3d 227, 239-40 (4th Cir. 2004) (striking Virginia's harmful to minors statute on dormant commerce clause grounds).

G.B.'s right to travel claim is without merit because S.B. 10 does not distinguish between out-of-state offenders and those from Ohio. *Salibra v. Supreme Court of Ohio*, 730 F.2d 1059, 1064-65 (6th Cir. 1984). Ohio's sex offender registry law applies equally

to all offenders, regardless of where their offense was committed, where they live, where they work, or where they intend to move. Because it is applied equally, it does not burden the right to travel. *Cutshall v. Sundquist*, 193 F.3d 466, 478 (6th Cir. 1999). Compare, *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 98 (3d Cir. 2008) (invalidating sex offender provisions that apply differently based on the state of conviction).

### 2. Dormant Commerce Clause

The negative implication of the commerce clause, U.S. Const. Art I., § 8, cl. 3, includes a prohibition on state regulation that "discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997). The dormant commerce clause prohibits states from improperly burdening interstate commerce, and may presumably protect the legitimate interstate trade in non-obscene adult material.

The states do not require the authorization of Congress to enforce their own remedial, civil sex offender registry laws. *See, e.g.*, *Weems v. Little Rock Police Dept.*, 453 F.3d 1010 (8th Cir. 2007) (upholding Arkansas sex offender residency restriction applied to offender moving into state from Maryland). But in this case, Congress has enacted a law under its commerce clause power to empower states to apply their own sex offender registry laws to offenders moving from state to state, and to provide for federal criminal penalties for offenders crossing state lines in interstate commerce and failing to comply with those sex offender registry laws.

The Adam Walsh Act, Pub. L. No. 109-248, §203, 120 Stat. 587, 613 (2006), was enacted to create a comprehensive national system for registration of sex offenders "to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators." 42 U.S.C. § 16901; *United States v. Samuels*, No. 08-5537, 2009 U.S. App. LEXIS 7084, *5 (6th Cir. 2009). The Adam Walsh Act "is essentially an effort by Congress to close the loopholes in previous sex offender registration legislation and to standardize registration across the states." *United States v. Ditomasso,* 552 F. Supp. 2d 233, 236 (D.R.I. 2008) (citing 152 Cong. Rec. S8012, 8013 (July 20, 2006)). S.B. 10 is part of a nationwide system of state laws empowered by and incorporated into the federal law enacted under the commerce clause power granted to Congress.

State laws passed pursuant to valid commerce clause powers may empower states to enact laws in furtherance of the federal law. *Id.* at 769- 770. Congress, exercising its power under the commerce clause, may authorize the States to engage in regulation that the commerce clause would otherwise forbid to the states. *Id.*; *Maine v. Taylor*, 477 U.S. 131, 138-139 (1986). Such authorization is established where the congressional direction to do so is "unmistakably clear." *Id.*; *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984).

In this case, the intent of Congress is unmistakably clear that the states are authorized and directed to enact sex offender registry laws in conformity with the Adam Walsh Act. The Adam Walsh Act provides that "[e]ach jurisdiction shall maintain a

jurisdiction-wide sex offender registry conforming to the requirements of this subchapter."  42 U.S.C. §16912.  Ohio has done so with S.B. 10 which states that it was specifically enacted to "conform [Ohio's law] to recently enacted requirements of federal law contained in the Adam Walsh Child Protection and Safety Act of 2006."  The Adam Walsh Act itself divides sex offenders into three tiers, like Ohio's corresponding tier system under S.B. 10.  *Compare*, 42 U.S.C. §16911; R.C. 2950.01.  The Adam Walsh Act also establishes time periods for registration of each offender tier, again as with Ohio's corresponding law.  *Compare,* 42 U.S.C. §16915; R.C. 2950.07(B).

This Court has already held that the federal Adam Walsh Act was within the commerce clause power of Congress, upholding the law as applied to a sex offender moving from another state to Ohio and failing to register under Ohio law.  *U.S. v. Trent*, 568 F.Supp. 2d 857, 862-863 (S.D. Ohio 2008) (Rice, J.).  As this Court observed in *Trent*, only one court up to that date had found that the Adam Walsh Act was not authorized under the Commerce Clause, and that ruling has since been overturned in *United States v. Powers*, 562 F.3d 1342 (11th Cir. 2009).  The Adam Walsh Act has withstood Commerce Clause challenges in several Circuits.  The federal Adam Walsh Act scheme relies on and incorporates the various state schemes, and included incentives and legislation do not violate the Commerce Clause.  Congress has "undoubted power" to redefine the distribution of power over interstate commerce.  *S. Pac. Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 769 (1945).  It is well established that a federal scheme enacted under the directives to the states to adopt parallel laws.  42 U.S.C. §§16912, 16925.

A claim under the dormant commerce clause is premised on the idea that Congress' the power to regulate commerce is not to be encroached upon by the states, but that purpose is not controlling when Congress has invited the states to assist it in exercising its power. The purpose of the dormant commerce clause doctrine is to "safeguard[] Congress' latent power from encroachment by the several States." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 154 (1982). Accordingly, "we only engage in [dormant commerce clause] review when Congress has not acted or purported to act." *Id*.

S.B. 10 was specifically enacted in response to Congress "express contemplation" of such laws and its invitation to do so, therefore, the commerce clause is not "dormant" in this case. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's right to travel and dormant commerce clause claim.

### C. Fourteenth Amendment Due Process

Plaintiff's third claim alleges that S.B. 10 is unconstitutional because there is no valid, constitutionally significant governmental interest in making obscenity offenders register when there is no objective evidence that obscenity defendants present a risk to the public. (Doc. 2 at ¶¶ 31-33). Accordingly, Plaintiff claims that S.B. 10 violates the Fourteenth Amendment's guarantee of due process.

The procedural component of the due process clause protects rights created by state law and guarantees that no significant deprivation of life, liberty, or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The

fundamental elements of procedural due process are notice and an opportunity to be heard. *See, e.g., Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir. 1992). In this context, Ohio Rev. Code § 2950.01(E)(1)(a) requires that an individual convicted of pandering obscenity be automatically subjected to Tier I classification, and the registration requirements and residency restrictions that follow.

A plaintiff can make a due process claim through one of two methods: "(1) [by] demonstrating that [she] is deprived of property as a result of [an] established state procedure that itself violates due process rights; or (2) by proving that [d]efendants deprived [her] of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss." *Mocene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).

Generally, legislation is presumed to be constitutional. *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998) (citing *McGowan v. Maryland*, 366 U.S. 420 (1961)). Social and economic legislation "carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981). Therefore, social and economic legislation is presumed to be valid unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97 (1979). Accordingly, the proper standard of review is the rational basis test – the government action must be "rationally related" to a "legitimate" government interest.

Laws reviewed under the rational basis test are entitled to a "strong presumption of validity." *Vacco v. Quill,* 521 U.S. 793, 800 (1997) (citing *Heller v. Doe,* 509 U.S. 312, 319 (1993)). If the Court finds any "plausible reasons" for the classification, articulated or not by the legislature, its "inquiry is at an end." *F.C.C. v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313-14 (1993) (citing *R.R. Ret. Bd. v. Fritz,* 449 U.S. 166, 179 (1980)).

The District Court for the Northern District of Ohio has already held that S.B. 10's registration and notification requirements are rationally related to the legitimate stated purposes of the legislation and therefore rejected substantive due process claims. *Valentine v. Strickland*, No. 5:08cv993 at 14 (N.D. Ohio Aug. 19, 2009), unreported (*See* Doc. 22, Ex. 1). Plaintiff has not presented any evidence in the instant case to rebut that finding. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's due process claim.

## IV. CONCLUSION

Accordingly: (1) Defendant's motion for summary judgment (Doc. 19) is hereby **GRANTED** (because upon the undisputed material facts Defendant is entitled to judgment as a matter of law); and (2) Plaintiff's cross motion for summary judgment (Doc. 21) is hereby **DENIED** (because upon the undisputed material facts Plaintiff is not entitled to judgment as a matter of law). Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the Court, by separate entry, shall forthwith enter judgment accordingly, and this case shall be **CLOSED**.

Date: March 31, 2010        s/ Timothy S. Black
                            Timothy S. Black
                            United States Magistrate Judge